FILED

2006 Feb-01 AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

99 MAR -8 PM 3: 17

U.S. DISTRICT COURT
N.D. OF ALABAMA

EDGAR H. BATTLE, d/b/a
EDGAR H. BATTLE FUNERAL
HOME, et al.,

ENTERED

PLAINTIFF,

MAR 8 - 1999

vs.

CASE NO. CV 70-J-752-S and
CONSOLIDATED CASES
CV 97-S-1321-S; CV 96-S-2529-NE;
CV 97-S-1910-S; CV 97-S-1911-S.

LIBERTY NATIONAL LIFE
INSURANCE COMPANY, et al.,

DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court are the Petition of Liberty National Life Insurance Company

("Liberty") and Brown-Service Funeral Homes Company, Inc., ("Brown-Service") to

Enforce Obligations Pursuant to Funeral Service Contracts and this Court's January 6, 1978

Final Judgment[1] (doc. 8); the Funeral Director Class Second Amended Petition for Review

and for Alternative Relief (doc. 10); and the Petition of SCI Alabama Funeral Services, Inc.

for Relief in Response to the Petition of Liberty National Life Insurance Company (doc. 18).

The court heard oral arguments on these pending petitions on February 9, 1999. The court

---

[1]For purposes of this opinion, Liberty National and Brown-Service will be considered to be the same entity. Brown-Serivce Funeral Homes Company, Inc. is a wholly owned subsidiary of Liberty National. *See Battle v. Liberty National Life Insurance Co.,* 77 F.Supp. 1499, 1503 and n. 9. (N.D.Ala.1991).

81

has also reviewed all position statements filed by parties in regard to the issues currently

before this court.[2]

## I. BACKGROUND

Included in the 1978 final judgment, at paragraph XXXIII, was:

This Court retains jurisdiction of the subject matter and all parties hereto for the purpose of enabling any of the parties to this action to apply to the court at any time for further orders and directions as may be necessary or appropriate for **construction** or **implementation** of the terms of this Final Judgment (emphasis added).

Final Judgment, *Battle v. Liberty National Life Ins.*, CV70-H-752-S (Jan. 6, 1978).

Pursuant to that paragraph, this court has jurisdiction to rule on the petitions of the parties

currently before the court.

In November, 1997, the Hon. Lynwood Smith entered a memorandum opinion in this

case which consolidated four removed state court cases with this litigation. *See*

Memorandum Opinion, November 26, 1997 (doc. 33). That same opinion states that the

funeral director class and Liberty National Life Insurance Company agreed that the court

should revisit the January 6, 1978 final judgment for the purposes of clarifying certain key

---

[2]Although, as explained below, this court found that the plaintiffs/plaintiff classes in the four cases consolidated with this action may have their claims, as they relate to the 1978 Final Judgment, resolved by the court's ruling on the pending petitions and therefore declined to hear oral argument from the plaintiffs at the court's motion docket on the motions they have pending in this consolidated case, the court does note that the plaintiffs/plaintiff classes in these underlying cases filed a joint position statement (doc. 47) in January, 1998, regarding the issues before this court. The court has considered their position statement as well as those of the Funeral Director class, SCI and Liberty National.

terms and conditions. *See id.,* at 2. Based on oral argument, the November, 1997 opinion

listed the disputed issues to be:

1.  What constitutes a "straight policy funeral" under the final judgment entered January 6, 1978?

2.  According to the final judgment, when does an "oversale" occur? More specifically, what constitutes "funeral merchandise and services under the policy" and what constitutes "additional services or merchandise"?

3.  What constitutes "overhead" for the funeral director class, and how did the final judgment contemplate that overhead costs would be reimbursed?

4.  How did the final judgment contemplate that inflationary cost increases would be distributed among the parties?

5.  How did the final judgment contemplate that disclosures on the effects of oversales would be made to holders or beneficiaries of Liberty National funeral policies? How much information are funeral directors required to give holders or beneficiaries?

6.  Did the final judgment contemplate that Liberty National burial policies would apply to cremations?

*Id.*, at 3. In the same opinion, the court recognized that clarification of the final judgment

of 1978 may be outcome determinative of the four consolidated cases now pending and

stayed the same.[3] *Id* at 2. In *Obering v. Rideout's-Brown Service Inc.*, the court explained:

---

[3]Although SCI, a petitioner in this case, has been removing cases to this court where it has been sued in state court for fraud, claiming this court has jurisdiction under the retained jurisdiction clause of the 1978 Final Judgment quoted on page one of this opinion, this court notes that the Hon. James H. Hancock, who entered that 1978 judgment, explained in a 1986 case that the court never intended to retain jurisdiction over all individual breach-of-contract and fraud actions filed against funeral service providers and relating to Liberty National policies. *See Obering v. Rideout's-Brown Service, Inc.*, CV-86-H-2372-S. This case is quoted from extensively in *Ex Parte Lacoste*, 1998 WL 787342 (Ala. 11/13/98).

[T]he court is convinced that the allegations set out in the plaintiffs' complaint do not jeopardize or interfere with this court's order in *Battle*. Not all claims by plaintiffs pursuant to Liberty National burial policies and allegations of fraud or breach of contract against a funeral provider affect the obligations of the insurance carrier under the policy construction reached in *Battle*, or the obligations of the carrier or Rideout's-Brown as the funeral service provider under that policy construction. The plaintiffs' complaint sets out only allegations of fraud, misrepresentation, and breach of contract against the service provider; in fact, the carrier is not a defendant to this suit and thus they do not seek to alter the rights of the policyholder or the obligations of the policy carrier or the service provider under the *Battle* decree.

*Obering v. Rideout's-Brown Service, Inc.*, CV-86-H-2372-S Order of March 3, 1987.

This case has a long and torrid history. As was observed in *Battle v. Liberty National*

*Life Insurance Co.*, by the Hon. Myron H. Thompson (sitting by designation):

This lawsuit, filed in 1970 on behalf of a class of Alabama funeral homes, has clung to life with a tenacity which, if it could be matched by humans, would undoubtedly have obviated the need for the "burial insurance" that has been the subject of contention in the case for over 20 years.

*Battle v. Liberty National Life Insurance Co.*, 770 F.Supp. 1499 (N.D.Ala.1991) *aff'd* 974

F.2d 1279 (11th Cir.1992), *cert. denied*, 509 U.S. 906, 113 S.Ct. 2999, 125 L.Ed.2d 692

(1993).

For purposes of the petitions pending before this court, the facts which are relevant

are as follows:[4]

---

[4]This court finds that an excellent statement of the facts of this case are contained in the opinion written by the Hon. Myron Thompson. *See Battle*, 770 F.Supp. at 1502-1503. Another excellent examination of the case background is contained in *Ex parte LaCoste* , 1998 WL 787342 (Ala. 11/13/98). *See also Battle v. Liberty National Life Insurance*, 660 F.Supp. 1449 (N.D.Ala.1987); *Battle v. Liberty National Life Insurance*, 877 F.2d 877 (11th Cir.1989) (containing a chronology of significant events in the life of this case at n.1 and *Battle v. Liberty*

4

Liberty National sold burial insurance policies in Alabama from 1944 until 1972.[5]
The benefits available under the policies depended on the policy selected. At issue here are
the "retail value" or "casket" policies, one being a $300.00 policy, the other being a $600.00
policy. The $300.00 policy provided for a wooded casket, the $600.00 policy provided for
a metal one.[6] The casket policies also provide for merchandise and services such as a burial
dress or suit, embalming and other preparation of the deceased's remains, use of the funeral
parlor, assistance in conducting the service, use of a funeral coach, and transportation of the
remains within a limited distance.

Pursuant to the 1978 Final Judgment, funeral directors who wanted to service the
burial policies had to enter a court approved contract with Liberty National.[7] That contract
states that "the Funeral Director agrees to furnish, in the manner described herein, all or any
part of the merchandise and services provided under any such policies within the radius
specified in the policy which he is being called upon to furnish by the beneficiary or other
person having control of the policy." Funeral Service Contract at ¶ 4. That contract further

_____

*National Life Insurance*, 974 F.2d 1279 (11th Cir. 1992).

[5]After 1972, Liberty National sold only policies that paid cash benefits upon the
policyholder's death, called "funeral expense" policies. Such policies are not the subject of this
litigation. *See Battle*, 770 F.Supp. at 1504, n.15.

[6]This court specifically finds that the "vault policies" are not at issue here.

[7]This contract is attached to the final judgment as "Exhibit A" and entitled "Brown-
Service Funeral Homes Company, Inc. Funeral Service Contract" (hereinafter referred to as
"Funeral Director Contract").

5

states that "Funeral Director also agrees that the service furnished under a burial policy of Liberty National shall include ... all of the items provided by such policies being performed and such services and assistance as is customarily furnished in the conduct of a funeral of the retail price shown in the policy in similar territories, specifically including such of the following as may be required: embalming, use of the funeral home, memorial service in chapel, church or elsewhere, hearse service to the cemetery within the radius specified in the policy." Funeral Service Contract at ¶ 11. Paragraph 9 of the same contract further states that "if other merchandise is selected and an oversale is thus made..." Funeral Service Contract at ¶ 9.

However, neither this contract, the Final Judgment, nor the policies themselves contained adequate answers to the questions enumerated by the Hon. Lynwood Smith, as stated above, especially the question of which additional or more expensive merchandise or services cause an "oversale" to occur. While the parties agreed during oral argument in front of that judge that the request of additional merchandise or services creates an oversale, the parties are unable to agree as to which services would or would not create such an oversale. Selection of a more expensive or different casket than that provided for by the policy was stated by the parties to create an oversale, but other circumstances which possibly could also create such are in dispute.

This court initially finds that the questions of what constitutes a "straight policy funeral" as that term is used in the Final Judgment and what creates an oversale are

6

inextricably tied together. Creation of an oversale allows the funeral director to convert the

policy to its retail value and allow that as a credit against the total cost of the funeral selected

by the policyholder's family. Thus, this court finds that the question of what circumstances

create an oversale to be pivotal to all of the issues before this court. The 1978 Final

Judgment, while referring to oversales, does not specifically set forth which specific events

create an oversale, and which do not.[8]

Later litigation, such as in *Battle*, 770 F.Supp. at 1506, references the oversale

provision of the 1978 Final Judgment, but again does not define the exact services which,

when requested, create an oversale, and which services do not.[9] That case notes that the five-

page notice of settlement, distributed to policyholders before the final Judgment was entered,

contained the following information about oversales: "If funeral merchandise and services

are purchased for the burial of the deceased insured, in addition to such services and

merchandise as provided in the policy, the policyholder shall receive credit on the funeral bill

for the full retail value of the benefits stated in the policy." *Battle*, 770 F.Supp. at 1507.

Nowhere has any document adopted by this court pursuant to the 1978 Final Judgment

---

[8]For example, while the parties agree that the selection of a different casket creates an oversale, would the use of a flower truck also require that an oversale occur?

[9]That case states that the settlement agreement which formed the partial basis for the 1978 Final Judgment "adopted what had been the customary practice; thus the settlement provided that in the event the family of a deceased policyholder chose **more expensive merchandise or services than were available under a policy**, the funeral director would charge the family for all such funeral benefits, but discount the retail value of the policy (emphasis added)." *Battle*, 770 F. Supp. at 1506.

actually set forth, in detail, the specific services and merchandise which are included in the policies, and which are not, hence the ongoing litigation about whether an oversale situation has been created.[10]

## II. RELIEF REQUESTED IN THE PENDING PETITIONS

Liberty National, the Funeral Directors class, SCI Alabama Funeral Services, Inc., and the plaintiffs/plaintiff classes in the consolidated cases all filed petitions and/or responses to petitions requesting that this court, pursuant to section XXXIII of the 1978 Final Judgment, interpret or construe provisions of the 1978 Final Judgment.[11]

Liberty National states in its Petition (doc. 8) that it has been notified that funeral directors who entered the Funeral Director Contract are providing funerals in which oversales are created in circumstances that Liberty National states should not constitute oversales. *See* Petition of Liberty National at 3-5. The services specifically referenced as creating oversales in the view of the funeral directors included night visitation and use of a flower truck. Liberty National states in its petition that policyholders should be able to purchase additional

_____

[10]The services and merchandise included in the policies would constitute a "straight policy funeral".

[11]While this court is aware that the four cases consolidated by the court by order of November 26, 1997 are pending as well, this court specifically notes that each of those are removed state court cases involving claims for state court actions. While in each of those cases the policyholders or beneficiaries of policyholders allege they did not receive the services or merchandise they state was promised under the policies, those cases must be considered in light of the customary and usual practices of funeral directors servicing Liberty National burial policies around the state regarding oversales. Any change in what constitutes an oversale pursuant to this memorandum opinion shall only apply prospectively.

8

items, not included in the straight policy funeral, without creating an oversale. Petition of Liberty National at 5.

The Funeral Director class states in its second amended petition for review and alternate relief that its petition is brought pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure. *See* Petition at 1 (doc. 10). While the Funeral Director class does not state on which basis listed in Rule 60(b)(5) it relies, the court finds none of these bases require this court to relieve the Funeral Director class from the 1978 Final Judgment. Clearly that judgment has not been satisfied, released, or discharged. The clause "a prior judgment on which it was based has been reversed or otherwise vacated" does not apply here. Assumably therefore, the class claims that "it is no longer equitable that the judgment should have prospective application." Rule 60 (b)(5), F.R.C.P. Setting aside the requirement under this rule that a motion for such relief be made "within a reasonable time," this court finds for numerous reasons, detailed below, that no relief is warranted based on the equity of the 1978 judgment's effect today.

The funeral directors state that the financial effect of servicing the burial policies are becoming more and more severe due to the rising costs of providing funerals. Petition of Funeral Director class at 2. The Funeral Director class claims that "The result of this inequity is that the funeral directors in this State are forced to provide the goods and services

9

outlined in these burial policies for a fee which is substantially less than the funeral directors'

overhead cost." Petition of Funeral Director class at 3.[12]

SCI Alabama Funeral Services, Inc. (hereinafter referred to as "SCI"), although a

member of the Funeral Director class, filed its own petition for relief (doc. 18) in response

to Liberty National's petition. In this petition, SCI states that it has been repeatedly sued for

fraud and breach of contract in connection with its servicing of Liberty National policies.

*See* Petition of SCI at 1. After the Court held a hearing on the pending petitions in

November, 1997, it directed the parties to address the issues stated to be in dispute.

Memorandum Opinion, November 26, 1997.

For the reasons explained below, the Funeral Director class' request for relief pursuant

to Rule 60(b)(5), F.R.C.P. be and hereby is **DENIED**.

## A. The Straight Policy Funeral

Liberty National, in its position statement (doc. 51), states that its long-standing

position with respect to those items included in a "straight policy funeral" is set out in a letter

from Warren B. Lightfoot to Judge James H. Hancock, dated May 5, 1987. That letter,

---

[12]The Funeral Director class includes with its petition an affidavit which states, that in the affiant's expert opinion, "servicing Brown-Service Burial Policies substantially reduces the revenue of the individual funeral homes, it reduces the profit of the funeral homes, it reduces cash flow .... Additionally, it is my expert opinion that it is not feasible for the funeral directors and multiple unit operators in the State of Alabama to provide goods and services covered in a "policy funeral" without taking a substantial financial loss. This opinion is based on the fact that the cost of funeral goods and services has increased significantly since 1978, when the Final Order was rendered in Battle...." Affidavit of Daniel M. Isard, attached as Exhibit A to Funeral Director class' petition.

10

attached to Liberty National's position statement as Exhibit A, references its own "Attachment A". That list is quite comprehensive.[13] SCI states that Judge Hancock set forth a list of goods and services which constitute a straight policy funeral in a portion of his opening statement at an December 9, 1977 hearing. Response of SCI at 2. Furthermore, SCI states that in 1980, Liberty National, in a letter to SCI's predecessor, listed those items not included in a straight policy funeral. Response of SCI at 4.

Meanwhile, the Funeral Director class states that the elements of a straight policy funeral are "clearly set forth on the face of all Liberty National\Brown Service burial policies and in this Court's Final Judgment." Position statement of Funeral Director class at 1. The funeral directors claim that the policies provide only for a "pauper's funeral". Funeral Director Class statement at 1-2. This Court finds that the questions of "retail value" of policies, "face value" of policies and "cash value" of policies had been interpreted consistently by the variety of court opinions entered since the Final Judgment of 1978. In one such opinion the court stated that:

> Despite the use of the phrase "retail value" in the policies, benefits equivalent to those guaranteed by each policy could usually be purchased at retail from a funeral home only at a price greater than the retail value of the policy."

*Battle*, 770 F. Supp at 1503. *See also Id.* at n. 8 ("Thus the phrase 'retail value' as used in this order, refers to the value of the burial policy as represented to purchasers by Liberty

---

[13]The plaintiffs/plaintiff classes in the consolidated cases state that they agree with Liberty National regarding what the policies include. *See* position statement of *Thrash* Policy Holder Class, *Williams* Policy Holder Class and *Middlebrooks* (doc. 47), at 2.

11

National and does not necessarily denote the actual market value or price of the merchandise or services available under the policy"). Although the funeral director class has tried to make the policy value into that of a pauper's funeral, that interpretation has never been given to the term "retail value" as used in the almost thirty years this litigation has been ongoing.

The plaintiffs/plaintiff classes in the consolidated cases argue that the policies are intended to provide a "complete funeral". Plaintiffs' position statement at 3. This seems to be what the court approved Funeral Director Contract contemplated, as it states that:

> The Funeral Director agrees, if called upon to handle the funeral of the deceased insured under a funeral expense policy or a funeral policy, to provide services and merchandise for the **complete funeral** of such deceased insured. Such services and merchandise shall have a retail value at least equal to the funeral benefits payable under the policy and shall consist of the casket and suit or dress, transportaion of remains to funeral home (not to exceed 35 miles), embalming and preparation of remains, use of funeral parlor, a place where the funeral services may be held; assistance in conducting the funeral services, use of funeral coach for transportation of remains to church, a home, cemetary, railway station or other point within 35 miles of the funeral home and such other services are customary and usual in the conduct of a funeral of the retail value provided under such policy by funeral directors operating in similar territories.... (emphasis added).

Funeral Director Contract at ¶ 12.

The court having considered all of the above, the court finds that "a straight policy funeral" intended to provide a complete funeral, which includes all of the following items:

> A casket –specifically the casket specified as provided for in the 1978 Final Judgment.
> A burial suit or dress as provided for in the 1978 Final Judgment.
> Answering the Death Call, including transportation of the remains to the funeral home (not to exceed thirty-five miles) and preparation of the removal form, if necessary.

12

Preparation of the body for burial - including bathing, disinfecting, embalming, dressing, placing the body in the casket and whatever else may be necessary for the body to be suitable for viewing, except for those services specifically listed by the court to be additional services, below.

Use of the funeral home - use of a viewing room, access to the facilities of the funeral home such as restrooms, telephones, parking, heating, air conditioning and seating areas

Funeral home staff necessary for the provided services.

Assistance in planning, conducting and furnishing a place for the holding of the funeral service. This specifically includes:

Determining where the services will be held (chapel, church or grave side)

Determining what time the service will be held

Determining who will conduct the service

Determining what type of service will be used

Making necessary contact with clergyperson selected by family regarding details of funeral; and if necessary, assisting in locating a clergyperson to perform the service

Instructing family on arrivals and departures

Notifying the cemetery

Instructing pallbearers

Arranging a police escort

Transportation of casket to the location of the service and to the gravesite within the stated 35 mile distance

Arranging flowers at funeral home, memorial service held at funeral home, if any, and graveside

Customary parking assistance

Assisting family to and from gravesite

Use of taped music at funeral parlor if the funeral parlor routinely makes the same available for non-policyholder funerals.

The court finding that this list is perhaps more comprehensive that what the Funeral Director class has previously been providing, these services shall be provided in all "straight policy funerals" conducted by contract Funeral Directors pursuant to Liberty National burial policies, from this date forward. This list in no way is to be viewed as creating a cause of action for previously held funerals. Additionally, the court specifically does not find that

13

these services were not part of a straight policy funeral before this time. This list is the result of the parties' petitions in this case for a construction of the terms of the Final Judgment entered on January 6, 1978. Thus, this list constituting the minimum services to be provided as a straight policy funeral shall apply prospectively only.

## B. What Constitutes an Oversale?

Liberty National states with that "Liberty National has consistently maintained that an oversale can only occur when the beneficiary rejects the casket provided under the policy and selects a more expensive casket."[14] Position statement of Liberty National at 4. The plaintiffs/plaintiff-classes agree with Liberty National that the rejection of the policy casket is the only way an oversale can be created. Position statement of plaintiffs at 6.

The 1978 Final Judgment, while never specifically defining oversale, does state that:

> The settlement Agreement provides many advantages to members of the policyholder class. The court will determine the quality of the casket to be furnished in fulfillment of the obligations of Liberty National under its burial insurance policies so that policyholders will receive funerals having a retail value not less than the value stated in the policy. **If more expensive merchandise or additional funeral services are purchased in connection with the burial of a deceased insured, the settlement will assure that the**

_____

[14]Liberty National argues that over eighty percent of all policy funerals have resulted in oversales, thus refuting the funeral director class' contention that they are forced to conduct an inordinate number of straight policy funerals at a loss. Position statement of Liberty National at 5. However, this statistic was cited in *Battle*, 770 F. Supp. at 1503. That section of that opinion was specifically reviewing the environment surrounding the 1977 settlement agreement and did not address the percentage of funerals creating an oversale since that agreement was entered. *See Battle*, 770 F.Supp. at 1503. No evidence of the percentage of policy funerals resulting in an oversale within the last ten years has been submitted to this court.

14

**full retail value of the burial insurance policy is credited upon such oversale** (emphasis added).

1978 Final Judgment at ¶ 2, p. 3.  Section VII of the Final Judgment requires that:

From and after the date of this Final Judgment and unless and until changed by this Court as hereinafter provided, the casket **to be furnished by Brown-Service** in fulfillment of burial insurance policies of Liberty National ... shall be of the same quality as the casket now being furnished ....

Section VIII then states that:

**Such casket, together with the services and garments required to be furnished** under such policies, shall provide the insured with funeral benefits .... it being understood, in any event, that all the services promised in such policies shall be provided.

The funeral director class takes the position that any more expensive merchandise or

any additional funeral services other than that merchandise specifically set forth in the policy

itself will create an oversale.[15]  Position statement of Funeral Directors (doc. 41) at 5.

SCI similarly takes the position that "if any other or additional services or

merchandise other than the merchandise and services set forth on the policies themselves are

requested by a policyholder, an "oversale" has been created under the *Battle* Judgment. In

---

[15]The court notes that under this interpretation, a policy funeral for which "additional services" are additionally charged could not exist. Thus, any item, no matter how minor, wanted that is not specifically enumerated in the policy or 1978 Final Judgment, would create an oversale.  The court finds this interpretation to be extremely harsh.

15

that event, the face amount of the burial policy is to be credited to the beneficiary against the total charge of the funeral."[16] Position Statement of SCI at 6.

The section of the Final Judgment most relevant to the dispute here is found at Section XVII: "Where other or additional services or merchandise are provided for the burial of the deceased insured and an "oversale" is thus made ..." Additionally, in the preamble, the court stated "If more expensive merchandise or additional funeral services are purchased in connection with the burial of a deceased insured, the settlement will assure that the full retail value of the burial insurance policy is credited upon such oversale." Final Judgment at 3.

The court finds that the selection of a casket other than the Liberty National policy casket would create an oversale because the source of the casket has changed. Instead of the casket being supplied by Brown-Service, it becomes a sale through the funeral home. As such, an oversale would be created because a different source must then be compensated for the casket. Similarly, this court is of the opinion that the selection of merchandise other than that supplied by Brown-Service would necessarily create an oversale. However, this court also notes that the only other possible item which could create an oversale using this definition would be a burial garment, as all other goods and services pursuant to the contract are already contemplated to be provided by the funeral director.

---

[16]SCI also takes the position that if an individual furnishes his own casket (and thus one not supplied by Brown-Service), an oversale is created. Position statement of SCI at 7.

16

This court finds that the Final Judgment makes numerous references to "other and additional services and merchandise" as being the triggering mechanism for creation of an oversale. *See, e.g.* § XVII (G)("Where other and additional services and merchandise are provided for the burial of the deceased insured and an 'oversale' is thus made...."). Thus, from a reading of the Final Judgment and the two exhibits attached thereto, this court finds that an oversale occurs when the customer selects either a different casket, a different garment or "additional services". Thus, the court must address the question of what additional services trigger an oversale and what services may be sold as incidentals to a funeral without creating an oversale. The Brown-Service Funeral Homes Company, Inc. Funeral Service Contract, attached to the 1978 Final Judgment as Exhibit A states that:

> Funeral Director also agrees that the service furnished under a burial policy of Liberty National shall include, for the charges specified herein, all of the items provided by such policies being performed and such services and assistance as is **customarily furnished in the conduct of a funeral of the retail value shown in the policy in similar territories, specifically including such of the following as may be required: embalming, use of the funeral home, memorial service in church, chapel or elsewhere and hearse service to the cemetery within the radius specified in the policy** (emphasis added).[17]

Funeral Service Contract at ¶ 11. The list of services to be provided is also stated in the following paragraph of the contract. That paragraph lists additional, included items:

> Funeral Director agrees, if called upon to handle the funeral of the deceased insured under a funeral expense policy or a funeral policy, to provide services

---

[17]The court's listing above of what constitutes a "straight policy funeral" must be read in conjunction with the "oversale" provisions of the Final Judgment. Obviously, if an item is included in the straight policy funeral, it cannot create an oversale.

and merchandise **for the complete funeral of such deceased insured**. Such
services and merchandise **shall consist of** the casket and suit or dress,
transportation of remains to funeral home (not to exceed 35 miles), embalming
and preparation of remains, use of funeral parlor, a place where the funeral
may be held, assistance in conducting the funeral service, use of funeral coach
for transportation of remains to church, a home, a cemetery, railway station,
or other point within 35 miles of the funeral home and such other services are
customary and usual in the conduct of a funeral of the retail value provided
under such policy by funeral directors operating in similar territories. If
service or merchandise in connection with the funeral of a deceased insured
under funeral expense policy or funeral policies be provided under a burial
policy or policies, then the funeral benefit provided under the funeral expense
policy or funeral policy may be used in whole or in part for the payment or
other expenses associated with the funeral of the insured.

Funeral Director contract at ¶ 4.

In consideration of all of the above, the Court finds that the following items may be

sold by the funeral home as additional or incidental goods and services <u>without</u> creating an

oversale as these are goods which are customary and usual in the provision of a complete

funeral but not clearly enumerated within the Final Judgment or Funeral Director contract:

Beautician and/or hairdresser.
Death certificates
Cost of Obituaries
Acknowledgment cards
Guest registers
Flower trucks
Memorial folders
Limousine service for the family of the deceased
Musicians or arrangements with musicians
Lodges

18

The following events or items shall create an oversale:

Selection of a different casket than that provided for in the policy; however, use of a casket provided by the family of the deceased DOES NOT create such an oversale.

Selection of a different garment that provided for in the policy; however, use of a garment provided by the family of the deceased DOES NOT create such an oversale.

Requesting additional services or merchandise beyond that enumerated above, such as more than one visitation time, or more than one memorial service.

Cremation[18]

## C. How are "Overhead Costs" and Inflation Handled under the Final Judgment?

Undisputedly, the Final Judgment does not mention inflation. *See* Final Judgment; Position statement of Funeral Directors at 7. Liberty National states that the Final Judgment contemplated all parties to the settlement agreement equally sharing its burden. Liberty National argues that as the costs of caskets and other merchandise provided to authorized funeral homes for policy funerals has risen, the additional costs have been absorbed by Liberty National. Position statement of Liberty National at 6.

While both SCI and the Funeral Director class (of which SCI is a member) state that they are losing vast sums of money in honoring the Liberty National policies, this court finds their arguments slightly deceptive. For example, the Funeral Director class attaches as an exhibit to its position statement the affidavit of Daniel Isard. Mr. Isard states that the average

---

[18]See section 1.D. below for a discussion of cremation.

19

service fee for a traditional funeral nationwide is approximately \$2,600.00. Isard affidavit, dated December 15, 1997, at ¶ 11. However, this court is aware that the average cost of many goods and services nationally is higher than in the State of Alabama. Thus, the national average service fee for a funeral is not particularly informative. Additionally, Mr. Isard discusses the cost of caskets. Id. at ¶ 11. However, Brown-Service provides the caskets for straight policy funerals. Thus, the cost of a casket nationally, or even in Alabama, is immaterial to the question of whether providing policy funerals is causing a financial hardship on the Funeral Director class.

Additionally, the Funeral Director class does not provide any evidence that providing straight policy funerals, as well as policy funerals where an oversale is created and the funeral home can thus charge current market price for the funeral, when considered together, still create a situation where the funeral home is losing money accepting the Liberty National policies. If this is the case, however, the court finds that the clear remedy of the funeral home is to not renew the Funeral Director Contract. Petitioning the court to rewrite the final judgment is not an available remedy to this situation.

Furthermore, as the plaintiffs/plaintiff classes point out, the sale of additional services, such as a register book, memorial folders and acknowledgment cards, are a source of income for the funeral director. Additional services which may generate income for the funeral directors include such items as arranging for musicians, providing flower trucks and arranging for obituaries to run in the paper or for death certificates to issue. While the

20

funeral directors may charge additional amounts for these goods and services, they may not use these types of items to create an oversale. The plaintiffs/plaintiff classes aver that often, the purpose of purchasing a burial policy is as a hedge against inflation. Plaintiffs/plaintiff classes' position statement at 14.

In *Johnson v. Memory Chapel Funeral Homes, Inc.*, Judge Hancock, in discussing the ongoing *Battle* litigation stated, "Should one or more authorized funeral directors through timidity or sound business judgment elect not to renew their arrangements with Liberty National for providing policy funerals, Liberty National will have to make other arrangements to discharge its obligations under the burial policy in the areas affected." *Johnson v. Memory Chapel Funeral Homes, Inc.*, CV-89-H-2117-W (N.D.Ala. 1990)

This court finds that the contract under which each of the funeral directors may service Liberty National policies is not mandatory. No funeral director has to renew the contract at the end of its term. As such, this court finds the Final Judgment did not need to address inflation or overhead because a funeral director who finds the contract to be unprofitable does not have to renew his or her obligation to accept the burial policies under the contract. Once the funeral director opts to renew the contract, he or she is bound by its terms and the terms of the Final Judgment.

In consideration of the foregoing, all requests for relief based on overhead or inflation be and hereby are **DENIED**.

21

## D. Disclosure of Oversales

SCI states that the funeral directors should disclose to Liberty National policyholders the merchandise and benefits that are provided for a burial under that policy. SCI also states that the funeral directors should disclose that the selection of a difference casket from that provided in the policy will cause the policy to be converted to a credit against total funeral charges. SCI suggests that a written disclosure be approved by the Court. Response of SCI at 7. This court finds that SCI should indeed disclose the above facts to their clients.

The plaintiffs/plaintiff classes argue that the silence regarding disclosures in the Final Judgment is evidence that the court, by entering that judgment, did not intend to create an exception for funeral directors from Alabama common law requiring disclosure in confidential relationships or the circumstances of the case. Position statement of plaintiffs/ plaintiff classes at 15-16. In a recent Alabama opinion, the court stated that in regard to the disclosure duties of a funeral home to beneficiaries of a burial policy:

> In this case, the duties allegedly breached by Spry are its duties allegedly imposed by law with respect to its customers (1) to tell the truth with respect to any credits to which its customers may be entitled; (2) to refrain from concealing material facts as to the nature of these credits, if any; and (3) to use due care in explaining the benefits inuring to its customers ... Spry's duties arose in context of a relationship between a provider of a funeral and burial services and the purchasers thereof, and arose without regard to whether [the insurer] fulfilled its duties to [plaintiffs].

*McNeely, et al., v. Spry Funeral Home of Athens, Inc., et al.,* 1998 WL 802766 (Ala.Civ.App., Nov. 20, 1998); citing *Green v. Wedowee Hosp.*, 584 So.2d 1309, 1315-16

22

(Ala.1991). Under Alabama law, to prove fraudulent suppression, a plaintiff must show (1) a duty to disclose the existing material fact; (2) suppression of this material fact; (3) that such suppression of the material fact caused the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered actual damages as a proximate result. *State Farm Fire and Casualty Co. v. Owen,* 1998 Ala. LEXIS 229 at 7 (Ala.1998)(slip op.); citing *Booker v. United American Ins. Co.*, 700 So.2d 1333, 1339 (Ala. 1997). The plaintiff must also prove that the defendant had knowledge of the material fact it allegedly suppressed. *Hood v. Nelda Stephenson Chevrolet*, 626 So.2d 1288, 1293 (Ala.1993).

In *State Farm v. Owen*, the court stated that "Any analysis of a fraudulent suppression claim must begin by asking the fundamental question whether the parties, given the situation, should be required to speak. In answering this question, we must examine what the parties actually did, as well as judge what they ought to have done." *State Farm v. Owen*, 1998 Ala. LEXIS 229 at 8. That court then listed the factors a court must consider in evaluating whether a duty to disclose exists. Those factors are: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances. *Id.* at 28, citing *Berkel & Co. Contractors, Inc. v. Providence Hospital*, 454 So.2d 496 (Ala.1984).

In *Johnson et. al v. Memorial Chapel Funeral Homes*, CV89-H-2117-W, Judge Hancock stated:

23

"The consent decree has been in effect for over ten years, during which time authorized funeral directors apparently have been able to fairly reveal and satisfactorily to explain to their customers the services and merchandise available under the policy funeral and the effect the choices available to them will have with regard to the loss of a policy funeral. The few fraud actions ... filed during that time frame attests the fact that an authorized funeral director should be able to conduct his business without undue exposure to fraud suits."

This court finds that Alabama law on when a duty to disclose exists is sufficient to protect funeral home directors from liability if they provide individuals with enough information to intelligently decide whether to opt for a non-policy casket.[19]  In consideration of all of the foregoing;

It is therefore **ORDERED** by the court that the Funeral Director class' request for a disclosure form be and hereby is **DENIED**.

## D. Cremations

The question has also arisen as to whether the burial policies apply to cremations. Liberty National takes the position that an oversale occurs in this situation, allowing a credit to the beneficiary for the retail value of the policy against the cost of the services selected as part of the cremation. Position statement of Liberty National at 8. The position statement of the Funeral Director class adopts a similar stance regarding cremations. Position statement of Funeral Directors at 9-10.

_____

[19]While the funeral home directors duty to disclose clearly encompasses much more than just casket selection, this court in no way intends to spell out each and every disclosure a funeral home must make to a bereaved and nothing in this opinion should be interpreted as doing so.

24

The court finds that the Final Judgment is silent as to cremations. This court further finds that the relevant parts of the Final Judgment addressed burial policies, caskets and the like. This court finds that cremations are not part of, or substitutable for a burial policy funeral.

In consideration of the above, this court **FINDS** that the policies in question do not apply to cremations. It is further **FOUND** by this court that a cremation creates an "oversale", such that the policy in question shall be converted to a credit against the cost of the cremation.

## III. THE CONSOLIDATED PLAINTIFFS/PLAINTIFF CLASSES CASES

Each of these cases was removed from state court by the defendant SCI, and plaintiffs in each case moved to remand the cases, asserting lack of jurisdiction. The Hon. Lynwood Smith issued a Memorandum Opinion which denied the plaintiffs' motions to remand and consolidated these cases with *Battle v. Liberty National* pursuant to Federal Rule of Civil Procedure Rule 42 (a).[20] *See* Memorandum Opinion , Nov. 26, 1997, CV 70-J-752-S. Judge Smith did not have the benefit of many of the position statements which have since been filed with the court pursuant to that same Memorandum Opinion. This court has reviewed, *sua sponte* this court's subject matter jurisdiction in each of these removed and consolidated cases.

---

[20]Judge Smith also stayed discovery in each of these actions pending the resolution of the petitions for relief. *See* Order, November 26, 1997.

## A. *Middlebrooks, et al., v. SCI Funeral Service, Inc., et al,* CV 97-S-1321-S

In *Middlebrooks, et al., v. SCI Funeral Service, Inc.,* the plaintiffs originally filed suit

in Mobile County, Alabama, on June 26, 1995. The defendant then filed a notice of removal,

referencing the plaintiffs' first amended complaint, which alleged:

The defendant fails to tell each member of the class that if that member chooses a casket other than the one supplied by Brown Service that the class member will be charged extra for the services that would be provided as a part of a package if the Brown Service casket had been chosen by the class member. The defendant conceals and suppresses from each class member the fact that selection of a casket other than the one provided by Brown Service by a class member will result in a higher charge to the class member and a greater profit for SCI.

Defendant's Notice of Removal, November 6, 1996 at 2, quoting plaintiffs' first amended

complaint at ¶ 17(d). This court has just finished a careful and thorough review of the

jurisdiction retained under Section XXXIII of the 1978 Final Judgment. Clearly, that

retained jurisdiction is for construction or implementation of that judgment, not to resolve

fraud actions filed some twenty years later alleging that the defendant is violating that very

Judgment.[21]

---

[21]Furthermore, this court notes that the plaintiffs in each of these consolidated actions should not have their state court claims foreclosed by the *Battle* case as these claims did not arise until recently. Unlike the situation the Eleventh Circuit considered in *Battle v. Liberty National,* 877 F.2d 877 (11th Cir. 1989), here the funeral home was already bound by the 1978 Final Judgment and the plaintiffs are claiming either they did not get what they were entitled to under that judgment, or that the funeral home did not disclose to them the effects of their decisions regarding caskets, etc., pursuant to that judgment.

26

The United States District Court for the Southern District of Alabama granted the defendants' motion to transfer this case to the United States District Court for the Northern District of Alabama on May 23, 1997. In *Middlebrooks*, no court has entered an order regarding the plaintiffs' motion to remand, pending since December 11, 1996. In the order granting the motion to transfer, the court specifically stated that, if, "after review Judge [Johnson] is of the opinion that this action does not fall within the Battle parameters, it is requested that the case be transferred back to this court for reconsideration of the motion to remand."[22]   *Middlebrooks v. SCI Alabama*, Order of May 23, 1997, CV 97-C-1321-S (S.D.Ala.1997).

This court has now stated repeatedly that the final judgment in *Battle* clarified and reformed the liabilities and obligations of Liberty National, Brown-Service and authorized funeral directors to customers in the case of funerals covered by the burial insurance policies of the defendants. That judgment does not foreclose state law fraud actions by individuals who allege that a funeral home wrongfully charged them. The *Battle* Judgment may be a defense to such an action, but it is not a bar to such an action.

This Court has repeatedly reviewed the final judgment in *Battle*, CV-70-H-752-S; *Battle v. Liberty National Life Insurance Company*, 770 F.Supp. 1499 (N.D.Ala. 1991);

---

[22]That court recognized that the parties are not diverse and no federal question is raised in plaintiffs' first amended complaint. The court further stated "If this action does not fall within the *Battle* final judgment, this action must be remanded, an act that must be performed by this court, not the transferee court." *Middlebrooks v. SCI Alabama*, Order of May 23, 1997, CV 97-C-1321-S (S.D.Ala.1997).

27

*Battle v. Liberty National Life Insurance Company*, 660 F.Supp. 1449 (N.D.Ala.1987); the plaintiffs' complaint in this consolidated action as well as numerous other documents contained in both this court's file and the court files from other cases consolidated with the original *Battle* litigation; and with orders from other judges denying consolidation and remanding the cases in consideration of the defendant's motion to consolidate here.

This court has also considered the matter of this court's subject matter jurisdiction, pursuant to 28 U.S.C. § 1446(c)(4) and § 1447(c). An action is properly removed from state court to federal court if the federal court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 or if there exists a diversity of citizenship and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332. A review of the notice of removal shows that the defendant asserts this court has jurisdiction in accordance with the final judgment in *Battle* and pursuant to the provisions of the Anti-Injunction Act, 28 U.S.C. § 2283; the All Writ's Act, 28 U.S.C. § 1651(a); and 28 U.S.C. § 1331.

However, neither the Anti-Injunction Act nor the All Writs Act confers jurisdiction on this court in the absence of a federal question or diversity of citizenship among the parties. *V.N.A. of Greater Tift County v. Heckler*, 711 F.2d 1020, 1036, n.1 (11thCir. 1983)("[t]he All Writs Act is not an independent source of jurisdiction. Rather, it empowers the court to issue injunctive orders to preserve potential jurisdiction founded in other provisions. *See FTC v. Dean Foods*, 384 U.S. 597, 603, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966); *ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1359 n. 19 (5th Cir.1978))." A

review of the complaint filed in the state court reveals that no federal question is present and that the parties do not reside in different states.

Recently, the Eleventh Circuit has examined the All Writs Act in the exact context as SCI has used it to remove cases from state court. *See Pacheco de Perez v. AT&T Company*, 139 F.3d 1368, 1378 (1998). In that case, the court states that "As the Second Circuit emphasized in Agent Orange, the exercise of authority under the All Writs Act is not appropriate where a district court is "determining simply the preclusive effect of a prior final judgment on claims or issues expected to be raised ... Rather, a district court's assumption of removal jurisdiction under the Act is proper, if at all, only 'to enforce [the court's] ongoing orders against relitigation and to guard the integrity of its prior rulings over which it has expressly retained jurisdiction.'" *Pacheco de Perez*, 139 F.3d at 1379-1380, citing *In re VMS Securities Lithog.*, 103 F. 3d 1317, 1324 (7th Cir.1996).

This court finds no attempt to relitigate the 1978 Final Judgment in *Middlebrooks*, or any of the other removed plaintiff actions. Rather, to be repetitive, this court finds that the plaintiff actions are all based on claims of not having obtained that to which they are entitled under the 1978 Final Judgment and the burial policies. Either the plaintiffs' claims are supported by the Liberty National burial policies as modified by the 1978 Final Judgment, or they are not. In either case, no need to modify, interpret or construct the Final Judgment exists.

After a careful review of the issues involved in the *Middlebrooks* case, and the issues in the *Battle* litigation, this court finds no basis for asserting jurisdiction. This court finds that the issue in *Middlebrooks* is whether the defendant had an obligation to inform the plaintiffs that if they selected caskets outside those provided for in the Liberty National burial policy an oversale would be created.[23] This question, while related to questions of "oversale" provisions of the burial policies, can be resolved without any attempted "undoing" of that final judgment. Succinctly put, the oversale requirement in the final judgment of the original *Battle* litigation provided that in the event that the family of a deceased policy holder chose more expensive merchandise or services than were available under a policy, the funeral director would charge the family for all such funeral benefits, but discount the retail value of the policy. In *Obering v. Rideout's Brown Service Inc.*, the court explained:

> [T]he court is convinced that the allegations set out in the plaintiffs' complaint do not jeopardize or interfere with this court's order in *Battle*. Not all claims by plaintiffs pursuant to Liberty National burial policies and allegations of fraud or breach of contract against a funeral provider affect the obligations of the insurance carrier under the policy construction reached in *Battle*, or the obligations of the carrier or Rideout's-Brown as the funeral service provider under that policy construction. The plaintiffs' complaint sets out only allegations of fraud, misrepresentation, and breach of contract against the service provider; in fact, the carrier is not a defendant to this suit and thus they do not seek to alter the rights of the policyholder or the obligations of the policy carrier or the service provider under the Battle decree.

*Obering*, CV-86-H-2372-S Order of March 3, 1987.

---

[23]Specifically on point is *Johnson v. Memorial Chapel Funeral Homes*, CV89-H-2117-W, quoted above as part of the court's consideration of whether a written disclosure form should be mandated by the court.

30

The defendant alleges in its Petition for Removal that plaintiffs' cause of action is likely to undermine the final judgment in the *Battle* litigation. *See* Notice of Removal at 5. Although that Judgment does not require a specific disclosure form, yet other authorized providers have been able to adduce from that Judgment what is necessary to disclose pursuant to it to prevent allegations of fraud, as evidenced by the relative lack of litigation on this particular issue in the past twenty plus years.

The plaintiffs here do not argue that Liberty National did not provide what the policy claimed to, rather that SCI suppressed material facts necessary for them to make an informed decision regarding the selection of a casket outside that which the policy provided. Nothing in this set of facts invokes the jurisdiction retained by Paragraph XXXIII of the Final Judgment in the *Battle* litigation. This Court can ascertain no attempt to unravel that settlement.

Therefore based on a consideration of all of the above, this court **FINDS** that the consolidation order previously entered in this case was improvidently granted. This court finds that this action should not have been consolidated with *Battle* and that jurisdiction does not exist pursuant to the final judgment in *Battle*. This court further finding that no independent grounds confer jurisdiction on this court, this court is without jurisdiction to retain this case in the United States District Court for the Northern District of Alabama.

Accordingly, this action is **TRANSFERRED** to the District Court for the Southern District of Alabama for remand to state court. This result is consistent with that reached by

the Honorable William M. Acker, Jr., United States District Judge, in *Mohl v. SCI Alabama Funeral Services*, CV 98-AR-1718-S (N.D.Ala.) and this Court's finding of lack of subject matter jurisdiction.

## B. *Elkins, et al, v. SCI Alabama Funeral Home, et al,* CV 96-S-2529-NE

In *Elkins*, the plaintiffs originally filed suit in Limestone County, Alabama, on August 23, 1996. The plaintiffs allege fraud, fraudulent suppression and other state court claims. The defendant SCI then filed a notice of removal essentially identical to the one discussed under the *Middlebrooks* case. That case was removed directly to the Northern District of Alabama.

In *Johnson et. al v. Memorial Chapel Funeral Homes*, CV89-H-2117-W, in a similarly removed case, the court stated that:

[I]mpact on the authorized funeral directors is of little significance where, as here, the state court suit does not affect the obligations of the insurance carrier under the policy construction determined in Battle or the obligations of the funeral service provider under that policy construction. One or two or six or twelve, or perhaps even more individual lawsuits in a short period of time against one or more funeral homes for common law fraud do not so interfere with the court's earlier order or its continuing supervision of the case to justify the extraordinary jurisdiction authorized under 28 U.S.C. § 1651(a) or § 2283.

Nothing in the facts of this underlying case is significantly different from the other cases which funeral homes have removed and which this Court has remanded.[24]

---

[24]While SCI states that a proliferation of fraud lawsuits have been filed in recent years, this court finds the number to be something under twenty. This court notes that less than twenty suits in twenty years can hardly be called a proliferation.

32

Therefore based on a consideration of all of the above, this court **FINDS** that the consolidation order previously entered in this case was improvidently granted. This court finds that lacking grounds for keeping this matter consolidated with the *Battle* litigation, this court is without jurisdiction pursuant to that final judgment.[25]

For the reasons detailed above, this action is **REMANDED** to the Circuit Court of Limestone County. This result is consistent with that reached by the Honorable William M. Acker, Jr., United States District Judge, in *Mohl v. SCI Alabama Funeral Services*, CV 98-AR-1718-S (N.D.Ala.) and this Court's finding of lack of subject matter jurisdiction.

### C. *Williams, et al., v. SCI, et al.,* CV 97-S-1910-S and *Thrash, et al., v. SCI*, CV 97-S-1911-S

In *Williams* and *Thrash*, the plaintiffs originally filed suit in Mobile County, Alabama. The Circuit Court in that case certified a plaintiff class of "all individuals who from October 23, 1989 to present paid an SCI owned funeral home for the services of a funeral director and staff when arranging a funeral in Alabama and the customer used a Liberty National burial policy to purchase a 'straight policy funeral'." Order of February 28, 1997 at 1-2. Although SCI quotes extensively from the 1978 Final Judgment, that Judgment simply does not bar state law actions against it for failing to comply with the explicit terms of the policies it has contracted to honor.

---

[25]See discussion of this court's lack of subject matter jurisdiction under II.A. (*Middlebrooks*) above.

33

In these two cases, the Circuit Court certified a class of individuals who allegedly had to pay for a service clearly provided under the Liberty National policies, the 1978 Final Judgment and the Funeral Director Contract adopted as a part of that judgment. This court finds no attempt by the plaintiff classes to "unravel" the 1978 Judgment, but rather to enforce it.[26] As this court stated in reference to the *Elkins* case, above, this court has just finished a careful and thorough review of the jurisdiction retained under Section XXXIII of the 1978 Final Judgment. That retained jurisdiction is for construction or implementation of that judgment, not to resolve fraud actions filed some twenty years later alleging that the defendant is violating that Judgment.[27]

This court finds that the class certified by the Mobile Circuit Court are individuals who have entered into contracts with SCI, used a Liberty National burial policy, attempted to receive a straight policy funeral pursuant to the Liberty National policy, and been charged for

_____

[26]Although this court will not decide any of these plaintiffs' claims on the merits, this court notes that SCI appears to be the party to every one of these actions which attempt to unravel the settlement by charging for services explicitly provided for in the policies. *See* Funeral Director Contract, attached as Exhibit A to the 1978 Final Judgment. SCI is not asking this court to interpret or construct the 1978 Final Judgment, but to alter it because of its claim that it is losing money in servicing these policies. *See* Section XXXIII of the Final Judgment As this court explained above, this court will not change the Final Judgment to make it more profitable to SCI.

[27]Furthermore, this court notes that the plaintiffs in each of these consolidated actions should not have their state court claims foreclosed by the *Battle* case as these claims did not arise until recently. Unlike the situation the Eleventh Circuit considered in *Battle v. Liberty National*, 877 F.2d 877 (11ᵗʰ Cir. 1989), here the funeral home was already bound by the 1978 Final Judgment and the plaintiffs are claiming either they did not get what they were entitled to under that judgment, or that the funeral home did not disclose to them the effects of their decisions regarding caskets, etc., pursuant to that judgment.

34

services that the policy has been held to cover. *See* Order of Mobile County Court at 3, 4. This is not the same class which was certified by Judge Hancock.[28] *See e.g. Battle*, 877 F.2d at 879. This case is also distinguishable from *Battle v. Liberty National Life Insurance*, 660 F.Supp. 1449 (N.D.Ala.1987) as that case involved claims against Liberty National brought in state court, where the state court found that the plaintiffs had not gotten adequate notice of the settlement agreement and therefore should be allowed to pursue an action identical to the *Battle* case. Unlike that case, here one set of plaintiffs, the pre-need class (the Williams class), are those who presented their policies to SCI to make arrangements for their own "straight policy funerals". In one example of a member of this class, SCI accepted the burial policies and charged Mr. and Mrs. Williams $1,072.00 each for the "minimum services of the funeral director." Circuit Court of Mobile County Order at 3, note 5. The other class, the at-need class (the Thrash class) are the beneficiaries of the insured who used SCI for funerals, presented Liberty National burial policies, asked for straight policy funerals, and were charged for the "minimum services of the funeral director." Circuit Court of Mobile County

---

[28]Additionally the plaintiff class in *Battle* was suing Liberty National, who is not a party to this litigation. For a similar finding, see *Obering*, CV86-H-2372-S at 2 ("Plaintiffs here were members of the policyholder class under Battle .... However ... the court is convinced that the allegations set out in the plaintiffs' complaint do not jeopardize or interfere with this court's order in *Battle*. The plaintiffs' complaint does not affect the obligations of the insurance carrier under the policy construction reached in *Battle*, or the obligations of the carrier or ... the funeral service provider under that construction"). *See also McNeely, et al. v. Spry Funeral Home of Athens, Inc.* 1998 WL 802766 (Ala.).

Order at 3, note 6. This court finds, based on these sets of facts, no need to interpret the 1978 Final Judgment exists.[29]

As in *Middlebrooks*, the United States District Court for the Southern District of Alabama granted the defendants' motion to transfer these cases to the United States District Court for the Northern District of Alabama on July 23, 1997. In the order granting the motion to transfer, the court specifically stated that, "should Judge [Johnson] later determine that these actions do not fall within Battle's jurisdiction, this Court will reconsider the motions to remand upon the actions transfer back to this Court." *Thrash v. SCI Alabama*, Order of July 23, 1997, CV 97-AH-207-M (S.D.Ala.1997).

After a careful review of the issues involved in the *Thrash* and *Williams* cases, and the issues in the *Battle* litigation, this court finds no common issues between those two cases and *Battle*. This court finds that the issue in these two class actions is whether SCI is liable for fraud, breach of contract, and other state law claims for its alleged failure to honor the Liberty National policies as SCI contracted to do pursuant to the Funeral Directors Contract, Exhibit A to the 1978 Final Judgement. This court finds the logic it has applied to the remand of the *Middlebrooks* and *Elkins* cases, above, is equally compelling here.

---

[29]This is especially true considering that the funeral director class itself, of which SCI is a member, states in its position statement that "assistance in conducting the funeral service" is included on the face of the policies. Position statement of Funeral Director class at 2. Either SCI provided this service at no extra charge, or it did not. In either event, these facts do not require an interpretation of the 1978 Final Judgment.

36

The plaintiffs do not argue that Liberty National did not provide what the policy claimed to, rather the plaintiffs argue that SCI did not provide what they were obligated to pursuant to their obligation to honor that contract. Nothing in this set of facts invokes the jurisdiction retained by Paragraph XXXIII of the Final Judgment in the *Battle* litigation. This Court can ascertain no attempt to unravel that settlement.

Therefore based on a consideration of all of the above, this court **FINDS** that the consolidation order previously entered in this case was improvidently granted. This court finds that lacking grounds for keeping this matter consolidated with the *Battle* litigation, this court is without jurisdiction pursuant to that final judgment.[30]

Accordingly, this action is **TRANSFERRED** to the District Court of for the Southern District of Alabama for remand to state court. This result is consistent with that reached by the Honorable William M. Acker, Jr., United States District Judge, in *Mohl v. SCI Alabama Funeral Services*, CV 98-AR-1718-S (N.D.Ala.) and this Court's finding of lack of subject matter jurisdiction in this and the other now unconsolidated actions.

## IV. ADDITIONAL REQUEST FOR RELIEF

The court having considered the requests of the funeral director class and SCI "to consolidate all present and future fraud/suppression cases arising out of servicing Liberty National burial policies in this Court," the court finds that under the totality of the above

---

[30]See discussion of this court's lack of subject matter jurisdiction under II.A. (*Middlebrooks*) above.

37

analysis, this request is due to be denied. *See Obering v. Rideout's-Brown Service, Inc.*, CV-86-H-2372-S and *Ex Parte Lacoste*, 1998 WL 787342 (Ala. 11/13/98) (both extensively cited, *supra*). This court finds that the *Battle* litigation should not be a bar to state court suits alleging that funeral homes are not complying with their obligations upon accepting these policies. This court finds no need for interpretation of the Final Judgment by a state court hearing a fraud action such as the ones removed to this court. Once a funeral home enters the Funeral Directors Contract, its obligations to provide services and merchandise pursuant to a Liberty National burial policy are fixed. While the Final Judgment may have created some obligations, nothing in it precludes individuals from filing state court claims against funeral homes for charges clearly not contemplated as allowable under the policies or the 1978 Final Judgment.

It is therefore **ORDERED** by the court that the requests for this court to consolidate all fraud/suppression cases arising out of servicing Liberty National policies be and hereby are **DENIED**.

**DONE** and **ORDERED** this the _____ day of March, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

38